1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                       **WESTERN DIVISION**

11

12  JOSE I. CORTEZ,                )      No. CV 04-3987 (CW)
                                   )
13                Plaintiff,       )      DECISION AND ORDER
            v.                     )
14                                 )
    JO ANNE B. BARNHART,           )
15  Commissioner, Social Security  )
    Administration,                )
16                                 )
                  Defendant.       )
17  _____ )

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21  review of the Commissioner's denial of disability benefits.  As

22  discussed below, the court finds that the Commissioner's decision

23  should be reversed and this matter remanded for further proceedings.

24                       **I.  BACKGROUND**

25       Plaintiff Jose Cortez was born on September 13, 1964, and was

26  thirty-eight years old at the time of his administrative hearing. [AR

27  46, 338.]  He has fourteen years of formal education in El Salvador

28  and past relevant work experience as a paint mixer and painter. [AR

                                    1

18, 159.]  He alleges disability on the basis of a lumbar sprain, stress, depression and nerves. [AR 64.]

## II.  PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on June 4, 2004, and filed on June 8, 2004.  On December 7, 2004, defendant filed plaintiff's Administrative Record ("AR").  On February 17, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 30, 2001, alleging disability since May 15, 1999. [AR 46, 331.]  An administrative hearing was held on October 3, 2002, before Administrative Law Judge ("ALJ") Fenton Hughes.  [Transcript, AR 338.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff through a Spanish language interpreter. [AR 338, 339.]   The ALJ denied benefits on December 26, 2002.  [Decision, AR 25.]  When the Appeals Council denied review on April 21, 2004, the ALJ's decision became the Commissioner's final decision.  [AR 4.]

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject

2

1  the finding and set aside the decision to deny benefits.  <u>See</u> <u>Aukland</u>

2  <u>v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Tonapetyan v.</u>

3  <u>Halter</u>, 242 F.3d 1144, 1147 (9th Cir. 2001); <u>Osenbrock v. Apfel</u>, 240

4  F.3d 1157, 1162 (9th Cir.  2001); <u>Tackett v. Apfel</u>, 180 F.3d 1094,

5  1097 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

6  1998); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996); <u>Moncada</u>

7  <u>v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

8      "Substantial evidence is more than a scintilla, but less than a

9  preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence

10  which a reasonable person might accept as adequate to support a

11  conclusion." <u>Id</u>.  To determine whether substantial evidence supports

12  a finding, a court must review the administrative record as a whole,

13  "weighing both the evidence that supports and the evidence that

14  detracts from the Commissioner's conclusion." <u>Id</u>.  "If the evidence

15  can reasonably support either affirming or reversing," the reviewing

16  court "may not substitute its judgment" for that of the Commissioner.

17  <u>Reddick</u>, 157 F.3d at 720-721; <u>see also</u> <u>Osenbrock</u>, 240 F.3d at 1162.

18                      **V.  <u>DISCUSSION</u>**

19      **A.   THE FIVE-STEP EVALUATION**

20      To be eligible for disability benefits a claimant must

21  demonstrate a medically determinable impairment which prevents the

22  claimant from engaging in substantial gainful activity and which is

23  expected to result in death or to last for a continuous period of at

24  least twelve months. <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at

25  721; 42 U.S.C. § 423(d)(1)(A).

26      Disability claims are evaluated using a five-step test:

27          Step one: Is the claimant engaging in substantial
    gainful activity?  If so, the claimant is found not
28  disabled.  If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment?
If so, proceed to step three.  If not, then a finding of not
disabled is appropriate.
Step three: Does the claimant's impairment or
combination of impairments meet or equal an impairment
listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
so, the claimant is automatically determined disabled.  If
not, proceed to step four.
Step four: Is the claimant capable of performing his
past work?  If so, the claimant is not disabled.  If not,
proceed to step five.
Step five: Does the claimant have the residual
functional capacity to perform any other work?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended

April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20

C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or

"not disabled" at any step, there is no need to complete further

steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four,

subject to the presumption that Social Security hearings are non-

adversarial, and to the Commissioner's affirmative duty to assist

claimants in fully developing the record even if they are represented

by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at

1288.  If this burden is met, a prima facie case of disability is

made, and the burden shifts to the Commissioner (at step five) to

prove that, considering residual functional capacity ("RFC")[1], age,

---

[1]  Residual functional capacity measures what a claimant can
still do despite existing "exertional" (strength-related) and
"nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155
n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to
work without directly limiting strength, and include mental, sensory,
postural, manipulative, and environmental limitations.  Penny v.
Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155
n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a
nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,

4

1  education, and work experience, a claimant can perform other work

2  which is available in significant numbers.  Tackett, 180 F.3d at 1098,

3  1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

4      **B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

5          Here, the ALJ found that plaintiff had not engaged in substantial

6  gainful activity since the alleged onset date of May 15, 1999 (Step

7  One), that plaintiff had "severe" impairments, namely depression,

8  musculoligamentous strain/sprain of the lumbar spine with multilevel

9  disc protrusions and lateral recess stenosis (Step Two), and that

10 plaintiff did not have an impairment or combination of impairments

11 that met or equaled a "listing" (Step Three). [AR 18-19.]  The ALJ

12 found that plaintiff had the RFC to perform unskilled light work with

13 postural limitations, which would preclude plaintiff from performing

14 his past medium-level work as a painter and paint mixer (Step Four).

15 [AR 22.]  At Step Five, the ALJ found that Rule 202.16 of the Medical-

16 Vocational Guidelines, which would direct of a finding of "not

17 disabled," should be used as a "framework" because plaintiff was

18 incapable of performing all of the non-exertional demands of light

19 work. [Id.]  Finally, the ALJ used Social Security Ruling ("SSR") 83-

20 14 as an additional framework to find that plaintiff could perform

21 most sedentary and light jobs. [AR 23.]  Thus, it was concluded that

22 plaintiff was not under a "disability" as defined by the Social

23 Security Act. [Id.]

24     **C.  ISSUES IN DISPUTE**

25         The parties' Joint Stipulation identifies four disputed issues:

26 1.  Whether the ALJ failed to evaluate properly the treating
       medical evidence;

27 

28 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

5

2.    Whether the ALJ failed to evaluate the plaintiff's
subjective complaints, specifically, about his pain and
medication side effects;

3.    Whether the ALJ properly assessed plaintiff's RFC; and

4.    Whether the ALJ improperly failed to obtain the testimony of
a vocational expert.

[JS 2.]

**D.    ISSUE ONE: THE TREATING MEDICAL EVIDENCE**

Approximately one and a half years after sustaining a workplace injury to his back in May 1999, plaintiff began receiving psychiatric treatment from Dr. Thomas A. Curtis for the purpose of a workers' compensation claim. [AR 227.]  Dr. Curtis twice administered a series of psychological tests to plaintiff, including the Minnesota Multiphasic Personality Inventory ("MMPI-2"). [AR 253, 295.] On both occasions, Dr. Curtis noted that plaintiff's MMPI-2 results were invalid for several reasons, including plaintiff's intense emotions while taking the test, impaired motivation, "personal or cultural variations of high symptom reporting," and a serious mental disorder with mental confusion. [AR 258, 259, 295.]  Dr Curtis twice emphasized that the invalidity of the test results was not due to conscious malingering or exaggeration by plaintiff. [AR 258, 259.]  Ultimately, Dr. Curtis diagnosed plaintiff with Depressive Disorder, not otherwise specified with anxiety, as well as Psychological Factors Affecting Mental Condition.[2] [AR 259.]  Dr. Curtis concluded that plaintiff had a permanent emotional impairment of a "slight-to-moderate" degree. [AR 261.]

---

[2]   The factors included stress-intensified headaches, increased neck/shoulder/back muscle tension/pain, chest pain, abdominal pain and alternating constipation/diarrhea. [AR 296.]

6

1    The ALJ concluded that Dr. Curtis's opinion was entitled to "less
2    weight" than those of other psychiatric professionals who were
3    involved in the case. [AR 21.]  The reasons provided by the ALJ to
4    discount the opinion included "dramatic inconsistencies" within Dr.
5    Curtis's medical report, the fact that Dr. Curtis's assessed
6    limitations "did not rise to the level of disability," and the fact
7    that Dr. Curtis's opinion was prepared for a workers' compensation
8    case.  The ALJ also cited approvingly the opinion of examining
9    psychiatrist Franklin Drucker, who, contrary to Dr. Curtis, concluded
10   that plaintiff was a "malingerer" with a dependent personality
11   disorder but no credible psychiatric disease. [AR 20.]
12       Based on the Ninth Circuit's standard for the evaluation of
13   medical evidence, the ALJ failed to provide sufficiently "specific and
14   legitimate reasons supported by substantial evidence in the record" to
15   discount the opinion of Dr. Curtis.  Lester v. Chater, 81 F.3d 821,
16   830 (9th Cir. 1995); Benecke v. Barnhart, 379 F.3d 587, 591 & n.1 (9th
17   Cir. 2004).  First, there were no "dramatic inconsistencies" within
18   Dr. Curtis's report.  The ALJ specified only one alleged
19   inconsistency, whereby the report stated both that plaintiff has a
20   "slight-to-moderate" degree of emotional impairment as well as
21   "serious" mental confusion and disorder. [AR 20.]  A review of the
22   report as a whole, however, reveals that both statements were
23   compatible with Dr. Curtis's ultimate conclusion that plaintiff
24   suffered from a mental impairment that was not attributable to
25   malingering or conscious exaggeration.  That the adjectives used to
26   qualify the severity of plaintiff's mental impairments were not
27   identical was not a specific and legitimate reason to discount the
28   opinion in its entirety.  See Spraque v. Bowen, 812 F.2d 1226, 1230

1  (9th Cir. 1987)(ALJ's mere reference to minor inconsistencies in
2  treating physician's report is legally insufficient to discount the
3  opinion.)

4      Second, the fact that the limitations assessed by Dr. Curtis, by
5  themselves, did not rise to the level of a disability did not justify
6  discounting Dr. Curtis's opinion.  Plaintiff's alleged disability was
7  based on a combination of impairments, of which his mental impairments
8  were only one component.  In the Ninth Circuit, the ALJ must consider
9  the combined effect of all of the claimant's impairments on his
10 ability to function, without regard to whether each alone is
11 sufficiently severe.  Smolen, 80 F.3d at 1290; Lester, 81 F.3d at 829
12 (citing Sprague, 812 F.2d at 1231)(plaintiff's illnesses must be
13 considered in combination and must not be fragmentized in evaluating
14 their effects).  Thus, the fact that plaintiff's mental impairments,
15 by themselves, might not rise to the level of a disability does not
16 warrant rejecting Dr. Curtis's opinion.

17     Third, the fact that Dr. Curtis prepared his opinion in the
18 context of a workers' compensation proceeding was not a specific and
19 legitimate reason to discount the opinion.  Although the ALJ correctly
20 stated that workers' compensation disability ratings are not
21 controlling in disability cases decided under the Social Security Act,
22 an ALJ may not disregard a physician's medical opinion simply because
23 it was initially used in a workers' compensation proceeding.  See
24 Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Booth v. Barnhart,
25 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002)(citing Coria v. Heckler, 750
26 F.2d 245, 247-48 (3rd Cir. 1984)).  Accordingly, the ALJ's discounting
27 of Dr. Curtis's opinion because the disability standards for workers'
28 compensation and Social Security proceedings "are not the same" is not

                                   8

legally sufficient under the Ninth Circuit's standard for the
evaluation of medical evidence. [AR 21.]  It is noted that the ALJ did
not cite similar justifications to reject the opinion of plaintiff's
treating orthopedist, who was also a worker's compensation physician.
[AR 21, 317.]

Fourth, the opinion of examining psychiatrist Drucker, which was
afforded greater weight than the opinion of Dr. Curtis, rests on shaky
premises.  Dr. Drucker based his opinion that plaintiff has a
dependent personality disorder (but no credible psychiatric disease)
in part on the fact that plaintiff lives with his aunt and had failed,
by the age of thirty-six, to marry or "form a stable adult
relationship with a contemporary woman." [AR 130.]  However,
plaintiff's reasons for not having an extended relationship, namely
his physical pain and "insufficient money to go out," make it entirely
reasonable that plaintiff would be "comfortable about his single
lifestyle." [AR 159.]  In addition, Dr. Drucker's interpretation of
plaintiff's MMPI-2 results as "grossly exaggerated" and justifying a
characterization of plaintiff as a "malingerer" is not borne out by
the record.  Whereas Dr. Drucker used the MMPI-2 results to support a
finding of malingering [AR 133], treating physician Curtis interpreted
the results to indicate a serious mental disorder [AR 259], and an
independent evaluator, Dr. Alex B. Caldwell, was cautious not to
interpret the results as conclusively establishing malingering. [AR
145.]  Furthermore, both the ALJ and Dr. Drucker made much of the fact
that plaintiff was observed sitting motionless in Dr. Drucker's
waiting room for 90 minutes in a chair that is usually avoided by
patients with back complaints. [AR 21, 123.]  There is no indication,
however, that Dr. Drucker's waiting room was subject to the continuous

surveillance that such an observation would require.  Furthermore,
there are multiple references in the record to plaintiff's difficulty
with sitting that refute Dr. Drucker's lone observation. [AR 160, 319,
321, 347.]  Under these circumstances, the ALJ's preference for Dr.
Drucker's opinion was not legally justified.

Collectively, the ALJ did not provide specific and legitimate
reasons supported by substantial evidence in the record to discount
Dr. Curtis's opinion.  This requires that Dr. Curtis's opinion be
credited as true.  <u>Lester</u>, 81 F.3d at 834; <u>Harman v. Apfel</u>, 211 F.3d
1172, 1178 (9th Cir. 2000).  Even so, however, it is not clear that
plaintiff must be found disabled.  Other than a diagnosis of permanent
"slight to moderate" emotional impairment, Dr. Curtis's opinion
contains no expression of disability.  In addition, there was no
testimony by a vocational expert who could have opined what effect the
functional limitations contained in Dr. Curtis's opinion would have on
plaintiff's ability to work.  Accordingly, remand for further
proceedings is required.

**E.  ISSUE TWO: PLAINTIFF'S PAIN AND SIDE EFFECTS**

In Issue Two, plaintiff argues that the ALJ failed to evaluate
plaintiff's subjective complaints regarding his pain and side effects
from medication.

Plaintiff's complaints of pain were corroborated by plaintiff's
treating orthopedist, Dr. Gromis. [AR 320.]  In a workers'
compensation "permanent and stationary orthopedic report" dated April
10, 2002, Dr. Gromis diagnosed plaintiff with musculoligamentous
strain/sprain of the lumbar spine with multilevel disc protrusions and
lateral recess stenosis. [<u>Id.</u>]  Dr. Gromis concluded that plaintiff's
lumbar spine rendered him "significantly disabled to compete for a job

in the Open Labor Market" and that plaintiff was eligible for vocational rehabilitation. [AR 321.]  Notwithstanding the ALJ's crediting of Dr. Gromis's opinion, not all of the functional limitations inherent in the opinion seem to have been evaluated. Plaintiff's pain and limitation from prolonged sitting, as documented in the medical opinion, should have been factored into the ALJ's assessment of plaintiff's functional limitations.  Thus, upon remand, a reassessment will be required.

With respect to plaintiff's medication side effects, the ALJ noted that plaintiff was taking only "herbal medications," which indicated that plaintiff's pain was not severe. [AR 21.]  Accordingly, the ALJ ignored plaintiff's testimony that his medications made him sleepy. [AR 354.]  The record reveals, however, that it was possible that plaintiff was taking more than just herbal medications.  In January 2001, plaintiff was prescribed Wellbutrin, Buspar and Prosom for his mental impairments. [AR 308.]  Although it is unclear whether plaintiff was still taking these medications at the time of the administrative hearing, all three of them are known to cause sleepiness. Physicians' Desk Reference, pp. 472, 783, 1126 (52nd ed., 1998).  Further inquiry is required regarding what medications plaintiff is taking and what side effects are produced.  Plaintiff's functional limitations should then be reassessed accordingly.

**F.   ISSUE THREE: PLAINTIFF'S RFC**

In Issue Three, plaintiff argues that the ALJ erroneously assessed plaintiff's RFC.  However, given that plaintiff's RFC will be reassessed in light of the crediting of Dr. Curtis' opinion and the possible inclusion of additional functional limitations, this issue is no longer pertinent.

1

### G. ISSUE FOUR: THE LACK OF VE TESTIMONY

2      In making his Step Five determination, the ALJ found that

3 although Rule 202.16 of the Medical-Vocational Guidelines ("Grids")

4 would direct a finding of "non-disabled," the rule should be used as a

5 "framework" because plaintiff "cannot perform all of the non-

6 exertional demands of work at the light level." [AR 22.]   The ALJ then

7 used Social Security Ruling ("SSR") 83-14 to provide an additional

8 "framework" to evaluate plaintiff's combination of exertional and non-

9 exertional impairments. [AR 23.]   The ALJ did not obtain the testimony

10 of a vocational expert.   Based on SSR 83-14, the ALJ found that

11 plaintiff's non-exertional limitations (including occasional

12 limitations in climbing, balancing, stopping, kneeling, crouching and

13 crawling) would have a minimal effect on the occupational base for

14 sedentary and light work and, thus, plaintiff could perform a

15 significant number of jobs in the national economy. [Id.]

16      Under these circumstances, the ALJ's findings did not satisfy the

17 Commissioner's Step Five burden to prove that claimant was capable of

18 performing other work that is available in significant numbers.

19 First, the ALJ understated plaintiff's non-exertional impairments by

20 excluding those assessed by Drs. Curtis and Gromis.[3]   Furthermore, the

21 ALJ's reliance on SSR 83-14 as a "framework" to evaluate the effect of

22 plaintiff's non-exertional impairments, without more, failed to

23 account adequately for plaintiff's functional limitations.

24 Specifically, SSR 83-14 states that when the effect of a plaintiff's

25

26     [3] The record shows that plaintiff's non-exertional impairments
include a depressive disorder, psychological factors affecting his
mental condition (including stress-intensified headaches, increased
27 neck/shoulder/back muscle tension/pain, chest pain, abdominal pain and
alternating constipation/diarrhea), and slight to moderate pain in the
28 lumbar spine. [AR 296, 320.]

non-exertional limitations on the light work occupational base is not obvious, the opinion of a vocational expert is "often required."[4] SSR 83-14 at 5. At the very least, the ALJ must consult a vocational resource (such as <u>The Dictionary of Occupational Titles</u> or other publications listed in 20 C.F.R. §§ 404.1567, 416.966), identify jobs that the claimant can perform, and provide a statement of the numbers of such jobs in the regional economy. <u>Id.</u> at 6; <u>see also</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996)(other "reliable evidence" of a claimant's ability to perform specific jobs can substitute for the testimony of a VE). Here, the ALJ did none of these things. Thus, the ALJ's conclusion that plaintiff's functional limitations did not significantly narrow the occupational base for light and sedentary work cannot stand. Given that plaintiff has significant non-exertional impairments, it is recommended upon remand that the testimony of a vocational expert be obtained. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001); <u>Tackett</u>, 180 F.3d at 1101-02.

**H.   REMAND FOR FURTHER PROCEEDINGS**

The decision whether to remand for further proceedings is within the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate

---

[4] The Social Security Rulings also highly recommend the testimony of a vocational expert where, as here, a plaintiff has significant non-exertional impairments (SSR 85-15 at 3) or an unusual limitation in his ability to sit or stand (SSR 83-12 at 4); <u>see also</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101-02 (9th Cir. 1999)(inability to sit for prolonged periods is a significant non-exertional impairment that requires testimony from a vocational expert).

award of benefits.  <u>Harman</u>, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  <u>Id</u>. Here, as set out above with respect to Issues One, Two and Four, outstanding issues remain before a finding of disability can be made. Accordingly, remand is appropriate.

**VI.   <u>ORDERS</u>**

Accordingly, **IT IS ORDERED** that:

1.    The decision of the Commissioner is **REVERSED**.

2.    This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3.    The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.


DATED: December 28, 2005

_____/s/_____

CARLA M. WOEHRLE
United States Magistrate Judge

14
